R. L. HEFLIN, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8100.     Promulgated August 8, 1927.

The payment by the petitioner of one-half of its net profits in equal parts and in proportion to their stock holdings to its two principal stockholders, in return for the pledging by the stockholders of private securities for the petitioner's credit, constituted a distribution of profits and not an ordinary and necessary expense of carrying on the business.

*William S. Hammers, Esq.,* and *H. D. Underwood, Esq.,* for the petitioner.

*William H. Lawder, Esq.,* for the respondent.

The petitioner appeals from a determination of deficiencies in income and profits taxes for the fiscal years ended July 31, 1920, and July 31, 1921, in the respective amounts of $9,316.18 and $9,530.75. For each year the respondent has refused to allow the petitioner to deduct as an operating expense one-half of its net income paid out to its principal stockholders under agreements whereby the stock-holders pledged their personal securities for the petitioner's credit in return for such portion of the petitioner's net income.

### FINDINGS OF FACT.

The petitioner is a Texas corporation with its principal office at Galveston. It is engaged in the business of purchasing cotton seed products for export trade. The corporation was organized early in the year 1919 and began operations August 1, 1919. The capital stock authorized and outstanding during the years in question amounted to $20,000. It was all owned in equal shares by Kate Heflin and G. H. Gymer. The former was the widow of R. L. Heflin, who had conducted the business individually for a number of years prior to its incorporation. G. H. Gymer was, for many years, an employee and business associate of R. L. Heflin. During the years 1920 and 1921 he served as manager of the business and received as compensation for his services a salary of $3,600 for the first year and $5,000 for the second year.

The business in which the petitioner was engaged was generally considered a hazardous one. There was often required the use of considerably more capital than was available to the corporation in order to operate to the best advantage. To obtain the necessary additional credit the petitioner entered into agreements with its two principal stockholders whereby the latter were each to assign over an equal amount of private securities to the petitioner's bank for the credit of the petitioner and were to receive in return a one-fourth part each of the net profits of the business. Pursuant to these agreements the following instruments of assignment were executed:

Whereas, it is contemplated that the corporation of R. L. Heflin, Inc. of Galveston, Texas, in the conduct and management of its business of exporting cottonseed products, etc., will require loans and advances of funds from its bankers, Hutchings, Sealy & Co. of Galveston, Texas, in excess of its capital stock and said capital stock being owned largely by Geo. H. Gymer of Galveston, Texas, and myself, and it being desirable that said bankers should be secured as far as possible in any loans or advances made said corporation of R. L. Heflin, Inc.

Now, therefore, in consideration of the premises, and as a pledge to secure the said Hutchings, Sealy & Co. in any loans or advances which may be made by said firm of Hutchings, Sealy & Co. to the corporation of R. L. Heflin, Inc., during the season of 1919–1920, beginning August 1, 1919 and ending July 31, 1920, I have this day deposited with said Hutchings, Sealy & Co., the following

deeds, documents, papers and securities, conditioned that the said Geo. H. Gymer shall deposit or cause to be deposited with said firm of Hutchings, Sealy & Co., securities, papers and documents of equal value as those now deposited by me, as a pledge also to secure any and all loans and advances which may be made to said corporation of R. L. Heflin, Inc., and under the same terms and conditions as the securities so deposited by me with said firm of Hutchings, Sealy & Co.

I further agree and bind myself that of such securities now deposited by me with Hutchings, Sealy & Co. as may not be negotiable, I will, upon demand of said Hutchings, Sealy & Co. to make them so, and further agree to execute any and all papers, deeds, releases, etc. as may be necessary to put the title to the property mentioned in any such papers or deeds, in Hutchings, Sealy & Co. should there be any default in the payment of any or all advances so made by said Hutchings, Sealy & Co. to said corporation, of R. L. Heflin, Inc., and should the same become necessary. And in the event I shall fail to do so, I hereby constitute and appoint John Sealy of Galveston, Texas, my true and lawful attorney, to execute, in my name, all deeds, papers and other documents which may be necessary to accomplish the purpose of this agreement, hereby ratifying and confirming any and all lawful acts which my said attorney may do by virtue thereof:

The deeds, documents and papers and securities mentioned above and which are now deposited with said Hutchings, Sealy & Co. are as follows:

| | |
|---|---|
| 95 shares of the capital stock of the American Indemnity Co. of Galveston—value 186.6 per share | $17,727.00 |
| 100 shares of the capital stock of R. L. Heflin, Inc., par value | 10,000.00 |
| Total | 27,727.00 |

(Signed)    Mrs. Kate E. Heflin

The first three paragraphs of the agreement executed by Geo. H. Gymer were identical with the first three paragraphs of the foregoing. The agreement then provided—

The deeds, documents and papers and securities mentioned above and which are now deposited with said Hutchings, Sealy & Co. are as follows:

| | |
|---|---|
| 100 shares of the capital stock of R. L. Heflin, Inc. of the par value of | $10,000.00 |
| Liberty bonds of the face value of $4300.00 but of estimated value of | 4,050.00 |

*Second Liberty Loan:*

| | |
|---|---|
| Bonds Nos. 1,338,087, 1,338,088 and 1,338,089 each for $100.00 | $300.00 |
| Bond #191,107 | 500.00 |
| Bond #191,108 | 500.00 |

*Fourth Liberty Loan:*

| | |
|---|---|
| Bonds Nos. 117,861 to 117,870, ten bonds of $100.00 each | 1,000.00 |
| Bond #702669 | 1,000.00 |
| Bond #2,761,733 | 1,000.00 |
| Total Liberty Bonds | 4,300.00 |

| | |
|---|---:|
| My life insurance policy in the Great Western Life Insurance Co. of Kansas City, Mo., now International Life Insurance Co., #GW 894, of the cash value of___ | $1,503.00 |
| My life insurance policy in the Franklin Life Insurance Co. of Springfield, Ill., #89043, of the cash value of___ | 382.00 |
| 15 shares of the capital stock of the American Indemnity Co. of Galveston, of the value of $186.66 per share, valued at___ | 2,800.00 |
| 2 shares of the capital stock of Dickinson State Bank, Dickinson, Texas___ | 200.00 |
| 20 shares of stock of the Caldwell Oil Mill Co., Caldwell, Texas, of the par value of $100.00 per share, cost me___ | 3,000.00 |
| DEEDS: | |
| Deeds to 9-13/100 acres of land out of Perry & Austin League, north bank of Dickinson Bayou, addition to town of Dickinson, Galveston County, Texas, and improvements, of the value of___ | 4,100.00 |
| Total___ | 26,035.00 |

(Signed)        GEO. H. GYMER.

The agreements were formally adopted by the petitioner at a stockholders' meeting held July 31, 1919. The minutes of such meeting read as follows:

GALVESTON, TEXAS, *July 31st, 1919.*

At the Annual meeting of the Stockholders of R. L. Heflin, Inc. this day held in Galveston, the President stated:

"That in negotiating credit with the Company's bankers, Hutchings, Sealy & Co., they had declined to extend to the company sufficient line of credit to enable it to transact a profitable business, stating that the Company's capital of $20,000.00 was not sufficient to justify more than a moderate line of credit; that in attempting to arrive at a solution of the difficulty, he and Mrs. Kate E. Heflin had decided to make a proposition to the company which would properly finance it for the ensuing year; That he and Mrs. Kate E. Heflin would deposit with Hutchings, Sealy & Company personal collateral in such an amount as demanded by Hutchings, Sealy & Co. to secure line of credit needed by the Company for the transaction of its business, provided that he and Mrs. Kate E. Heflin would receive 50% of the profits earned in the operation of R. L. Heflin, Incorporated, during the twelve months next succeeding, commencing August 1st, 1919 and ending July 31st, 1920, less necessary expenses, and that the company would receive 50 per cent of the profits during stated period."

Motion was made and unanimously adopted as follows:

"That the proposition made the Company by Mr. Geo. H. Gymer and Mrs. Kate E. Heflin to finance the business of the Company for twelve months, they to receive one-half of the profits earned in the transaction of the business of the company, less necessary expenses."

For the next fiscal year ended July 31, 1920, the stockholders executed similar instruments assigning approximately the same assets, and the agreements were duly approved by the petitioner at a stockholders' meeting held July 31, 1920. The firm of Hutchings,

Sealy & Co. with whom the securities were pledged, advanced to the petitioner the credit that was needed to carry on its business during the years 1920 and 1921. The petitioner gave to the bank its demand notes for the amounts advanced and paid interest thereon to the bank. These notes were usually paid when the petitioner realized upon the particular transaction for which they were given. Each note purported to be secured by a lien upon the bill of lading covering the shipment of the goods described therein, but the bills of lading were at all times in the possession of the petitioner. The credit with Hutchings, Sealy & Co. was increased by the assignment to it of the private securities of the stockholders at least to the extent of the value of such securities, exclusive of the capital stock of the petitioner which was pledged by the stockholders.

For the fiscal years ended July 31, 1920, and July 31, 1921, the petitioner paid over to the stockholders one-half of the net income of the business amounting to $19,722.82 and $20,516.76 for the respective years. These amounts the petitioner charged to expenses and deducted from gross income upon its income-tax returns for those years. The respondent has refused to allow the deduction in computing the petitioner's net taxable income.

### OPINION.

Smith: The only question to be decided in this appeal is whether the amounts paid out by the petitioner to its principal stockholders under the agreements above described come within the deductions permitted by section 234 (a) (1) of the Revenue Acts of 1918 and 1921. The section, which is identical in both Acts, reads as follows:

Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, and including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity. * * *

There is no question raised as to the legality or the *bona fides* of the agreements entered into between the petitioner and its stockholders. Presumably the securities deposited with Hutchings, Sealy & Co. were, during the years involved, subject to the uses and purposes stated in the agreements.

We are of the opinion, however, that the payment of 50 per cent of the net profits of the business for the use shown to have been made by

the petitioner of the additional credit provided by the pledging of the securities did not constitute an ordinary and necessary expense of carrying on the petitioner's business. We do not know, in the first place, to what extent the additional credit was really necessary or was actually used by the corporation. The evidence is to the effect that the credit needed to carry on the business to the best advantage was at times greatly in excess of the company's capital. There is not shown, however, any specific instance of the use of the credit provided by the pledging of the securities. As to the general method of conducting the business, G. H. Gymer deposed as follows:

Q. Now, the money that you borrowed for the corporation, Mr. Gymer, was practically all on short loans, wasn't it, demand notes?

A. Most of it, averaging.

Q. Not over 10 days after payment?

A. No, they were indefinitely.

Q. Weren't they demand notes?

A. They were demand notes, but at the same time we were never called upon to pay them, until we had shipped the goods, and were able to satisfy the notes.

Q. The fact is, in that case, the bank was willing to hold those notes for you?

A. Yes, sir.

Q. And then accept payment from the goods that they held the notes against?

A. Yes, sir, exactly.

\*         \*         \*         \*         \*         \*         \*

Q. When you gave the notes with this memorandum to the bank, showing the cars it covered as security, did you furnish something to Hutchings, Sealy to indicate that they had a lien on that property?

A. Oh, the receipt itself states so.

Q. The trust receipt?

A. The trust receipt, yes, sir, and the car numbers are cited on this trust receipt, together with the number of pounds contained, and the amount, the amount of the draft.

The total face value of the securities pledged including the $20,000 of capital stock of the petitioner was approximately $54,000. The petitioner paid to the stockholders approximately $20,000 for each of the years 1920 and 1921. This was not an ordinary expense.

The two stockholders to whom the money was paid owned all of the petitioner's stock in equal shares and received proportionate parts of the money. The result would have been precisely the same if the company had paid out the money by regular dividends. In the light of the evidence before us the transaction was simply a distribution of the earnings of the corporation. Cf. *Appeal of Universal Milking Machine Co.*, 4 B. T. A. 506.

Reviewed by the Board.

*Judgment will be entered for the respondent.*